In October, 1930, the defendant Lamarca and his wife executed a mortgage on 20 acres of land in Tangipahoa Parish to secure the payment of four notes executed by them aggregating $1,382 in amount, payable on May 1st, 1931, 1932, 1933 and 1934, respectively, with interest and attorneys' fees. In due course these notes came into the possession of the Tangipahoa Bank 
Trust Company, and this suit is by the State Bank Commissioner to foreclose this mortgage to pay said notes, interest, attorneys' fees and cost.
The mortgaged property was adjudicated to the State in November, 1933, for unpaid taxes, and in July, 1936, Lamarca redeemed the property under Act 161 of 1934, as amended by Act 14 of the Fourth Extra Session of 1935, and secured a redemption certificate to the property from the Register of the State Land Office upon his agreement to pay the price for which the property was adjudicated in five annual installments as provided for in the above-mentioned acts. The State, of course, retained a tax lien and mortgage on the property to secure the payment of these installments.
Default being made in the payment of the installments, the property was sold at sheriff's sale to pay these installments in October, 1938, Horace R. Reid and J.P. Carruth becoming the purchasers of the property at this sale to whom a deed was made by the sheriff in accordance with the said acts.
These two purchasers filed a petition in this proceeding setting up the above facts and alleged that they are the owners of the property by reason of their purchase as aforesaid; that the property was transferred to them in said sheriff's sale free of any mortgages, liens or encumbrances, and *Page 437 
without any right of redemption; that the sheriff's sale to enforce payment of the installments due by Lamarca to the State for the redemption of the property was made under a lien and mortgage which was superior to the mortgage sought to be foreclosed, and that, in so far as the said property is concerned, the mortgage given by Lamarca in 1930 to pay the notes now held by the plaintiff has been nullified. They ask to be decreed the owners of the property and pray for an injunction to prevent its sale in these proceedings.
The Bank Commissioner, plaintiff in the foreclosure proceeding, answered this petition alleging that the aforementioned acts have expired and are no longer in force; that in case the court holds that said acts are still in effect and a sheriff's sale could be had thereunder, that such a sale does not divest the owner of his right of redeeming the property from said sale to the same extent and in the same manner as though the property had been sold to a third person for taxes; that if said acts permit the property to be sold free of the right of redemption, then said acts are contrary to Sec. 11 of Art. 10 of the Constitution; that if it is the purpose and intent of said acts to transfer the ownership of property sold at sheriff's sale to pay the delinquent installments under said acts free from the right of redemption, that said acts are unconstitutional as they deprive the owners and others of their property without due process of law.
The trial court granted a preliminary injunction restraining the sheriff and the plaintiff from selling said property. The Bank Commissioner has appealed.
The question presented is whether or not the sale of the property by the tax collector to enforce the payment of the delinquent installments due the State by Lamarca for the redemption of the property from the adjudication to the State for taxes had the effect of passing the property to Reid and Carruth free from the mortgage resting thereon at the time of adjudication, and free of any right of redemption on the part of Lamarca, or the plaintiff as a mortgage creditor.
In order to determine this question, it is necessary to give a brief summary of the constitutional and statutory provisions in force at the time the property was adjudicated to the State, as well as those enacted subsequently thereto, in so far as they may affect the question.
Article 10, Section 11 of the Constitution of 1921, as amended in November, 1932, provides that there shall be no forfeiture of property for the non-payment of taxes, but provides for the sale of the property, or so much thereof as may be necessary, by the tax collector after complying with certain formalities. The sale shall be without appraisement, and the property sold shall be redeemable at any time during three years from the recordation of the tax sale, by paying the price given, including costs and five per cent penalty thereon, with interest at one per cent per month until redeemed. Section 53 of Act 170 of 1898, as amended, provides for the adjudication of the property to the State where no one will bid a sufficient amount to cover the taxes, interest and costs. At the time that Lamarca's property was adjudicated to the State in 1933 for nonpayment of taxes, the right which he or the holder of the mortgage notes then had to redeem this property from the State was provided for by Section 62 of Act 170 of 1898, as amended by Act 72 of 1928. To redeem the property under this statute, he or the mortgage creditor would have had to pay the State the taxes due the State, as well as those due all other political subdivisions, up to the time of the redemption.
In the year 1934, while the title to this property was in the State under the adjudication for taxes, the Legislature passed two acts which affected the right of Lamarca, the owner of the property, and the holder of these mortgage notes, to redeem this property from the State. Both of these acts, instead of making it more burdensome to the owner or a mortgage creditor to redeem the property, on the contrary, made it much easier and less expensive for these interested parties to redeem the property. Act 175 of 1934 again amended Section 62 of Act 170 of 1898 so as to permit the owner and other interested parties to redeem the property on more liberal terms, and Act 161 of 1934 went much further and permitted the owner or other person interested personally or as heir, legatee, creditor or otherwise, except a judgment creditor of the owner, to redeem property adjudicated to the State, or any of its political subdivisions, up to and including September 30, 1935, by paying in five equal annual installments the taxes for which the property was adjudicated, with interest only from maturity on these installments. The person redeeming was required to sign *Page 438 
the certificate of redemption whereby he agreed to pay the installments and stipulated for the retention by the State of a tax lien and mortgage on the property to secure the payment of these installments.
The act further provided for the sale of the property by the tax collector on default in the payment of any of said installments, without suit, and in the manner provided for tax sales. The tax collector was required by the act to execute a deed to the purchaser at such a sale as in the case of judicial sales, and the purchaser was entitled to possession of the property. No provision was made for any redemption by the owner or other interested person from this sale. The liberal provisions of this act expired by its terms on September 30, 1935, without either Lamarca or the holder of the mortgage notes taking advantage of the act to redeem the property from the State.
The Legislature at the Fourth Extra Session held in September, 1935, Act No. 14 of 1935, 4th Ex.Sess., extended the liberal terms of Act 161 of 1934 to the twentieth day after the adjournment of the regular session of the Legislature of 1936. Within this extended period, viz., July, 1936, Lamarca took advantage of this extending act and redeemed his property by agreeing to pay the taxes due on it at the time of adjudication in five annual installments, the State reserving a tax lien and mortgage on the property to secure these payments.
The State has the right to determine the terms and manner on which it will permit a sale or redemption of property adjudicated to it for the nonpayment of taxes. Police Jury of Jefferson Davis Parish v. Grace, Register, et al. 182 La. 64, 161 So. 22. It is therefore obvious that the Legislature had a right to pass these two acts which, instead of restricting or impairing the constitutional right to redeem property, had the effect of liberalizing and extending the right of the owner or other interested person in redeeming property which had been adjudicated to the State for nonpayment of taxes.
It is contended by counsel for the Bank Commissioner that the above-mentioned acts, if constitutional, have expired. Both Act 161 of 1934 and the extending Act 14, 4th Ex.Sess. 1935, have been held constitutional. Police Jury of Jefferson Davis Parish v. Grace, Register, et al., supra; State ex rel. Violet Trapping Co. v. Grace, Register, et al., 182 La. 405, 162 So. 26; Violet Trapping Co. v. Grace, 297 U.S. 119, 56 S.Ct. 386, 80 L.Ed. 518. Therefore, when the redemption was effected by Lamarca in July, 1936, the extending act of 1935 was still in force. It is true that Act 183 of 1936, which undertook to further extend and enlarge the provisions of these previous acts, was declared unconstitutional. State ex rel. Chess Wymond Co. v. Grace,188 La. 129, 175 So. 825. However, that did not affect the redemption which had already been effected, and when the sale was made to Reid and Carruth in October, 1938, to enforce the payment of the installments due the State for the redemption of the property, Act 47 of 1938, similar in terms to the expired Acts, 161 of 1934 and 14, 4th Ex.Sess. of 1935, was in force and effect and supported the sale made to Reid and Carruth.
From November, 1933, when the property was adjudicated to the State, to October, 1938, when the sale was made to Reid and Carruth, was almost five years, during all of which time both Lamarca and the holder of the mortgage had a right to protect themselves by paying the amount of taxes for which the property was adjudicated, and it is obvious that neither has been deprived of any constitutional right of redemption. The sale made in 1938 to Reid and Carruth was to enforce a tax lien and mortgage on the property which the State had to secure the amount due it under the agreement of Lamarca. There was nothing to prevent either Lamarca or the holders of the mortgage to protect themselves from this sale by paying the installments. Neither of these interested persons was in any worse position than they would have been had the State chose to sell the property in 1938 to a third person under other statutory provisions to collect the taxes due thereon, if Lamarca had not attempted to redeem it himself in 1936.
To hold that a right of redemption remained in the owner and other interested persons after this sale to enforce the delinquent installments would practically mean an extension of such right to every subsequent sale made at the instance of the State to enforce payment of the price of lands adjudicated to it for unpaid taxes. We do not think any such right exists either under the Constitution or any statute.
We therefore conclude that the deed made by the tax collector to Reid and Carruth gave them a good title to the *Page 439 
property free from any further right of redemption and free from the operation of the mortgage herein sought to be foreclosed, and that the injunction properly issued to restrain the sale under the foreclosure proceedings.
For the reasons assigned, the judgment is affirmed.